UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------------X

GREEN MOUNTAIN HOLDINGS (CAYMAN) LTD.,

                         Plaintiff,

  -against-

PRECISION PRO CONTRACTING SERVICES, LLC, a New York limited liability company; MELVIN TURNER, JOHN DOE NO. 1 THROUGH JOHN DOE NO. XXX, inclusive, the last thirty names being fictitious and unknown to plaintiff, the persons or parties intended being the tenants, occupants, persons or corporations, if any, having or claiming an interest in or lien upon the premises described in the complaint,

                         Defendants.

Docket No.:
21-cv-03287(WFK)(VMS)

**SERVED:**

**October 16, 2023**

-------------------------------------------------------------------------------X

PRECISION PRO CONTRACTING SERVICES, LLC and MELVING TURNER a/k/a MELVIN TURNER, JR.,

                         Third-Party Plaintiffs,

  -against-

TRUIST BANK, FIRST CLASS DISTRIBUTION INC., BRENDA CARMELA, WASIK VENTURES, ROB TRUCKING LLC, DOUGLAS WASIK, ANNA "DOE", BRENDA "DOE", ZAWDI "DOE", and JOHN DOE NO. 1 THROUGH JOHN DOE NO. 99, inclusive, said names being unknown co-conspirators,

                         Third-Party Defendants.

-------------------------------------------------------------------------------X

**MEMORANDUM OF LAW IN OPPOSITION TO TRUIST BANK'S MOTION FOR SUMMARY JUDGMENT**

                                        Richland & Falkowski, PLLC
                                        Daniel H. Richland, Esq.
                                        5 Fairlawn Drive, Suite 204
                                        Washingtonville, New York 10992
                                        *Counsel for Defendant/Third-Party Plaintiffs Precision Pro Contracting Services, LLC and Melvin Turner a/k/a Melvin Turner, Jr.*

# TABLE OF CONTENTS

**PRELIMINARY STATEMENT** 1

**RELEVANT FACTUAL BACKGROUND** 2

**LEGAL STANDARD UNDER FRCP 12(B)(6)** 3

**POINT I:** **TRUIST BANK VIOLATED NY UCC 4-A-207(2), NY UCC § 4-A-303(3), AND NY UCC § 4-A-402 BY PAYING THE WIRE TO THE WRONG BENEFICIARY AND THEREBY IS OBLIGATED TO RETURN $308,939.72 TO PLAINTIFFS** 3

**POINT II:** **TRUIST HAD ACTUAL KNOWLEDGE THAT CLEARLAKE VENTURES LLC DID NOT HAVE AN ACCOUNT AND THAT THE BENEFICIARY ON THE PAYMENT ORDER DID NOT MATCH ITS ACCOUNT HOLDER.** 6

**POINT III:** **COMMON LAW CLAIMS ARE NOT PRECLUDED BY THE UCC** 8

**POINT IV:** **TRUIST IS NOT ENTITLED TO DISMISSAL OF PRECISION'S CLAIM OF CONVERSION** 9

**POINT V:** **TRUIST IS NOT ENTITLED TO DISMISSAL OF PRECISION'S CLAIM OF NEGLIGENCE** 11

**POINT VI:** **TRUIST IS NOT ENTITLED TO DISMISSAL OF PRECISION'S CLAIM OF INDEMNIFICATION** 12

**POINT VII:** **TRUIST IS NOT ENTITLED TO DISMISSAL OF PRECISION'S CONSTRUCTIVE TRUST CLAIM** 12

**POINT VIII: PRECISION WITHDRAWS THE
          FIFTH AND SIXTH CLAIMS.**                         14


**CONCLUSION**                                              14

# TABLE OF AUTHORITIES

*17 Vista Fee Assocs. v. Teachers Ins. & Annuity
    Ass'n of Am.*, 259 A.D.2d 75 (2nd Dept. 1999)     12

*Bank of America, Nat. Ass'n v. Brannon*,
    156 A.D.3d 1 (1st Dept. 2017)     7

*Banque Worms v. BankAmerica, Int'l*,
    77 N.Y.2d 362 (NY 1991)     3, 5

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)     3

*Citibank, N.A. v. Brigade Capital Management, LP*,
    49 F.4th 42 (2nd Cir. 2022)     4

*Costoso v. Bank of Am., N.A.*,
    74 F.Supp.3d 558 (EDNY 2015)     10

*Dora Homes v. Epperson*, 344 F.Supp.2d 875 (EDNY 2004)     12

*Family Health Mgt., LLC v. Rohan Devs., LLC*,
    207 A.D.3d 136 (1st Dept. June 9, 2022)     5, 9-12

*First Equity Corp. of Florida v. Standard
    & Poor's Corp.*, 690 F.Supp. 256 (SDNY 1988)     6

*Frankel-Ross v. Congregation Ohr Hatalmud*,
    2016 U.S. Dist. LEXIS 128342 (SDNY 2016)     7-8

*Intel Corporation Investment Policy
    Committee v. Smyrna*, 589 U.S. ____ (2020)     6

*Latham v. Father Devine*, 299 N.Y. 22 (NY 1949)     13

*Law Offices of K.C. Okoli, P.C. v. BNB Bank, N.A.*,
    481 Fed. Appx. 622 (2nd Cir. 2012)     10

*Ma v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    597 F.3d 84 (2nd Cir. 2010)     8

*Manufacturers Hanover Trust Co. v. Chemical Bank*,
    160 A.D.2d 113 (1st Dept. 1990)                    5, 9, 10

*Rao v. Triborough Bridge and Tunnel Authority,*
    223 A.D.2d 374 (1st Dept. 1996)                    7

*Sharp v. Kosmalski*, 40 N.Y.2d 119 (NY 1976)          12-13

*Simonds v. Simonds*, 45 N.Y.2d 233 (NY 1978)          13

*Targoff v. Wells Fargo Bank, N.A.*,
    67 Misc.3d 504 (West. Sup. Ct. 2020)               8

*Tracy v. Freshwater*, 623 F.3d 90 (2nd Cir. 2010)     3

*U.S. v. Kaiser*, 609 F.3d 556 (2nd Cir. 2010)         7

## STATUTORY CITATIONS

NY UCC § 1-201                                         6

NY UCC § 4-A-207                                       4, 6, 11, 13

NY UCC § 4-A-303                                       3-6, 11

NY UCC § 4-A-402                                       6

## PRELIMINARY STATEMENT

Third-Party Defendant Truist Bank ("Truist")'s motion for summary judgment must be denied in its entirety. There clearly remain genuine issues of material fact warranting a trial regarding Precision's first, second, third, fourth, and seventh claims under NY UCC § 4-A-303(3), conversion, negligence, indemnification, and constructive trust, respectively. Upon a review of the evidence, Precision withdraws the fifth and sixth claims for fraud and aiding and abetting fraud.

The core fact of Third-Party Plaintiff Melvin Turner ("Turner") and Third-Party Plaintiff Precision Pro Contracting Services ("Precision Pro") (collectively, "Precision") is that Precision made a $308,939.72 wire on April 28, 2021 to non-party Clearlake Ventures LLC ("Clearlake") for the payoff of the Mortgage (the "Wire"), the enforcement of which Mortgage is the subject of the first party action. The inescapable fact is that the Wire, received by Truist, was then applied, *not* to Clearlake's account, which did not exist, but to Third-Party Defendant First Class Distribution Inc.'s ("First Class"). There is no dispute that when Truist received the Wire, it actually knew that the Wire was for Clearlake, as beneficiary, but, inexplicably, deposited the funds into First Class' account. Truist should have returned the wire, rather than deposit the funds into First Class' account, but did not. As a result, First Class, as part of a fraudulent scheme, stole the funds from the Wire and the Mortgage was not paid off. Precision now seek the return of the funds from Truist under a number of different legal theories: NY UCC § 4-A-303(3), conversion, negligence, indemnification, and constructive trust.

Truist's motion for summary judgment lacks merit and there remains genuine issues of material fact warranting a trial.

## RELEVANT FACTUAL BACKGROUND

Insofar as relevant, on or about April 28, 2021, Precision wired $308,939.72 to Clearlake Ventures LLC to payoff a mortgage obligation against 617 Sackman Street, Brooklyn, New York 11212 ("Premises").  ECF Dkt. No. 39-6, p. 20.  The payoff letter Precision received was the product of fraudsters, who directed the wire to an account at Truist in the name of First Class. ECF Dkt. No. 39-13.

There is no dispute that the Wire, from Precision's account at JPMorgan Chase Bank, N.A. ("Chase"), was received by Truist.  ECF Dkt. No. 39-6, p. 20.  Clearlake has never had an account at Truist.  ECF Dkt. No. 39-6, p. 1.  The Wire specifically named Clearlake as the beneficiary, but Truist applied it to First Class' account.  ECF Dkt. No. 39-6, p. 20.  Precision learned of the fraud when the first party action was commenced.  **Exhibit 3,** p. 17 LL 14-20. Precision only learned of the specifics on August 31, 2021.  ECF Dkt. No. 39-6.  By the commencement of the first party action, the fraudsters had dissipated all of the funds.  *Id.*

# LEGAL STANDARD UNDER FRCP 12(B)(6)

"Under Rule 56(c), summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, <u>after adequate time for discovery</u> and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* (emphasis added).

In considering this motion, the Court must "construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." *Tracy v. Freshwater*, 623 F.3d 90, 95 (2nd Cir. 2010).

**POINT I:    TRUIST BANK VIOLATED NY UCC § 4-A-207(2), NY UCC § 4-A-303(3), AND NY UCC § 4-402 BY PAYING THE WIRE TO THE WRONG BENEFICIARY AND THEREBY IS OBLIGATED TO RETURN $308,939.72 TO PLAINTIFFS.**

Truist's motion for summary judgment seeking summary judgment upon Precision's first claim under NY UCC § 4-A-303(3) fails because privity is *not* required under New York law on a claim pursuant to NY UCC § 4-A-303(3). *Banque Worms v. BankAmerica Int'l,* 77 N.Y.2d 362, 374 (N.Y. 1991).

NY UCC § 4-A-303(3) states, "If a receiving bank executes the payment order of the sender by issuing a payment order to a beneficiary different from the beneficiary of the sender's order and the funds transfer is completed on the basis of that error, the sender of the payment order that was erroneously executed and all previous senders in the funds transfer are not obligated to pay

the payment orders they issued. The issuer of the erroneous order is entitled to recovery from the beneficiary of the order the payment received to the extent allowed by the law governing mistake and restitution."

On this motion, Truist argues, erroneously, that NY UCC § 4-A-303 has a privity requirement. By its own terms, (3) of that section does not. If Truist were correct, then (3) would not state that, "the sender of the payment order that was erroneously executed and all previous senders in the funds transfer are not obligated to pay the payment orders they issued." This language "collapses" the privity requirement since it excuses intermediate banks from liability. NY UCC § 4-A-303(3). This leaves three parties: (i) the sender, (ii) the final receiving bank, and (iii) beneficiary. Under NY UCC § 4-A-303(3), the sender, by its terms, is excused from payment to the receiving bank. *Id.* ("the sender of the payment order that was erroneously executed….[is] not obligated to pay the payment orders they issued"). Since the sender is excused from payment, the sender is entitled to seek restitution from the receiving bank, Truist. *Citibank, N.A. v. Brigade Capital Management, LP*, 49 F.4th 42, 58-59, 93-94 (2nd Cir. 2022).

This point is buttressed by N.Y. UCC § 4-A-207, entitled, "Misdescription of Beneficiary," which states that, "(1) If, in a payment order received by the beneficiary's bank, the name, bank account number, or other identification of the beneficiary refers to a nonexistent or unidentifiable person or account, no person has rights as a beneficiary of the order and acceptance of the order cannot occur." Hence, under this provision, when, as here, the payment order describes a "nonexistent…account," "no person has rights as a beneficiary of the order and acceptance of the order cannot occur." There can be no dispute that Truist had actual knowledge, at the time of the payment order, that the beneficiary named in the payment order was a "nonexistent account" at

4

Truist or that "First Class Distribution, Inc." is not "Clearlake Ventures LLC." ECF Dkt. No. 39-6, pp. 1, 20. Hence, Truist was not able to "accept" the payment order.

When, as here, "no person has rights as beneficiary" under the Wire, Truist could not accept the Wire, and had a duty to return the Wire. The New York State Supreme Court, Appellate Division, First Department has long recognized that, under this factual circumstance, the receiving bank in that circumstance then owes a duty or "an obligation on [the bank's] part… [to] return the funds." *Manufacturers Hanover Trust Co. v. Chemical Bank*, 160 A.D.2d 113, 125 (1st Dept. 1990); *see also Family Health Mgt., LLC v. Rohan Devs., LLC*, 207 A.D.3d 136 (1st Dept. June 9, 2022) (reaffirming this specific rule with respect to conversion claim). The alternative to this rule would be to allow a person or entity who receives money wrongfully to simply retain it to their own benefit: unjust enrichment.

Truist's argument as to privity thus rests on a misquote of language from *Banque Worms*. Truist's Memorandum of Law ("MOL"), p. 10. In the portion cited by Truist, the New York Court of Appeals notes that, "in comment 2…The originator's bank ordinarily would be entitled to recover the excess payment from the Beneficiary," reflecting the legal rules applicable to other sections of NY UCC Art. 4. *Banque Worms*, 77 N.Y.2d at 374. The Court of Appeals noted the contrast to NY UCC § 4-A-303: "section 4A-303 takes precedence and 'states the liability of the sender and the rights of the receiving bank in various cases of erroneous execution." *Id.* In other words, under NY UCC § 4-A-303, the "ordinary rule" requiring privity does not apply.

That ordinary rule applies to other provisions, such as the "money back guarantee" statute of NY UCC § 4-A-402 and NY UCC § 4-A-207 (when used independently of NY UCC § 4-A-303). In such circumstances, the proper way to unwind this type of misidentification is a proper unwinding of each portion of the wire, i.e., Truist returns the funds to Chase Bank, who returns

5

the funds to Plaintiffs. NY UCC § 4-A-303 is an exception to this rule, collapsing the ordinary privity requirement.

Since this is the only argument Truist advances in support of summary judgment, summary judgment must be denied to Truist on the law.

**POINT II: TRUIST HAD ACTUAL KNOWLEDGE THAT CLEARLAKE VENTURES LLC DID NOT HAVE AN ACCOUNT AND THAT THE BENEFICIARY ON THE PAYMENT ORDER DID NOT MATCH ITS ACCOUNT HOLDER.**

Truist's second argument is that it properly handled the payment order and lacked actual knowledge of either that the payment order was directed to a nonexistent account or that its own account holder was not the named beneficiary. MOL, p. 11. Truist seeks to escape knowledge by claiming that its records are the result of automated processes. These arguments are completely without merit.

Under NY UCC § 1-202(b), "knowledge" means actual knowledge. "Legal dictionaries give 'actual knowledge' the same meaning: '[r]eal knowledge as distinguished from presumed knowledge or knowledge imputed to one.'" *Intel Corporation Investment Policy Committee v. Smyrna*, 589 U.S. ____ (2020) (Part II(A)). Truist, as an entity, has the "actual knowledge" of its collective employees. *First Equity Corp. of Florida v. Standard & Poor's Corp.*, 690 F.Supp. 256, 260 (SDNY 1988). Upon information and belief, Truist had approximately 52,000 employees in 2021[1]. This actual knowledge is evidenced by its business records. *See, e.g. U.S. v. Kaiser,* 609 F.3d 556, 574-575 (2nd Cir. 2010) ("A business record need not be mechanically generated to be part of a 'regular practice'"); *Bank of America, Nat. Ass'n v. Brannon*, 156 A.D.3d 1, 9 (1st Dept. 2017) (upholding foreclosure affidavit of merit based upon manually entered and automated entry

---

[1] https://www.macrotrends.net/stocks/charts/TFC/truist-financial/number-of-employees

6

business records). A corporate defendant cannot deny actual knowledge of the contents of its own business records.

Truist's actual knowledge on these topics arise from its own admitted business records. On ECF Dkt. No. 39-6, p. 1, Truist admitted that it never had an account for "Clearlake Ventures LLC." This establishes Truist's actual knowledge that it did not have an account for "Clearlake Ventures LLC" on April 28, 2021. *Id.* The second document is the payment order itself, evidenced on ECF Dkt. No. 39-6, p. 20. On that document, which is again Truist's own record, Truist lists on Line 4200 Clearlake Ventures LLC as Precision's *intended* beneficiary and First Class Distributions, Inc. as to whom Truist was depositing the funds. From these documents it is crystal clear Truist actually knew that (i) it had no account for Clearlake Ventures LLC and (ii) that the payment order was being improperly credited to the wrong beneficiary. At a minimum, these records establish a genuine issue of material fact sufficient to warrant a trial.

In *Rao v. Triborough Bridge and Tunnel Authority*, the First Department held the defendant governmental entity had "actual knowledge of the underlying facts" vis-à-vis a late notice of claim by virtue of "the involvement of its employees in the accident and its filing of a police accident report…". 223 A.D.2d 374 (1st Dept. 1996). Precision's claim is even stronger than that in *Rao*: the very documents upon which Truist relies on this motion unequivocally establish that Truist actually knew that (i) it had no account for Clearlake Ventures LLC and (ii) that the payment order was being improperly credited to the wrong beneficiary.

To hold otherwise would allow a corporation to evade actual knowledge by claiming ignorance and automated processes, all of which are within the corporation's control. The cases cited by Truist are inapposite. In *Frankel-Ross v. Congregation OHR Hatalmud*, Judge Buchwald held that the "actual knowledge" requirement was not met because "it is simply not plausible that"

7

JPMorgan Chase Bank had actual knowledge from examining the payment order that "the beneficiary is identified as 'Ohr Hashabbos' and the account belonged to, "Congr. Ohr Hatalmud, Ohr Hashabbos, & Ohr Kitov, Inc.,"…"one would have actual knowledge that these two names referred to different persons." 2016 WL 4939074 (SDNY 2016) (unreported decision). By contrast, no one examining "Clearlake Ventures LLC" and "First Class Distribution, Inc." on the payment order here could possibly believe those were the same entities.

In *Targoff v. Wells Fargo Bank, N.A.*, also cited by Truist, "plaintiff neither alleges that defendant had actual knowledge of the discrepancy between the transferee's name and the account number, nor suggests any basis for such an inference, section 4-A-207 forecloses any duty on the part of the beneficiary's bank." 67 Misc.3d 504, 509 (West. Sup. Ct. 2020). Here, of course, Truist clearly had actual knowledge of the discrepancy. It admits having no account for Clearlake Ventures LLC (ECF Dkt. No. 39-6, p. 1) and the beneficiaries on the Truist's record of the payment order establish that Truist had actual knowledge that it was crediting an account which was not in the name of the actual beneficiary at the time it did so (ECF Dkt. No. 39-6, p. 20).

The key problem for Truist on this point is that Truist's own records reflect that Truist had actual knowledge of the discrepancy and that the intended beneficiary had no account at Truist.


**POINT III:   COMMON LAW CLAIMS ARE NOT PRECLUDED BY THE UCC.**

According to Truist, Precision's common law claims are precluded by the NY UCC provisions. This point is refuted by *Ma v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 597 F.3d 84, 89 (2nd Cir. 2010). In *Ma*, the Second Circuit held that, "Not all common law claims are per se inconsistent with [NY UCC Art. 4]." *Id.* (citations omitted). "Claims that, for example, are not about the mechanics of how a funds transfer was conducted may fall outside of this regime." *Id.*

8

Hence, Truist's blanket argument is insufficient to establish a basis for summary judgment. MOL, p. 14.

**POINT IV: TRUIST IS NOT ENTITLED TO DISMISSAL OF PRECISION'S CLAIM OF CONVERSION.**

The parties agree that, "to recover damages for conversion, a plaintiff must show legal ownership or an immediate superior right of possession to a specific identifiable thing and must show that the defendant exercised an unauthorized dominion over the thing in question to the exclusion of the plaintiff's rights." Truist's Memorandum of Law, p. 15.

Crucially, our exact fact pattern was reconfirmed to facially establish a claim for conversion under New York law by the Supreme Court of the State of New York, Appellate Division, First Department. *Family Health Mgt., LLC*, 207 A.D.3d at 136 (citing *Manufactures Hanover Trust Co.,* 160 A.D.2d at 113). In *Family Health Mgt., LLC*, the First Department clarified its prior precedent, *Manufacturers Hanover Trust Co.,* stating: "In holding that the defendant could be sued by the plaintiff in conversion, this Court observed that the plaintiff 'effected a wire transfer to [the defendant] of a specific sum, $223,280.74, to be credited to a specific account and, by doing so, created an obligation on [the defendant's] part either to treat the transfer in the specified manner or return the funds." *Id.* "We further held that since the defendant did not satisfy its obligation 'either to treat the transfer in the specific manner or return the funds,' it could be sued by plaintiff in conversion." *Id.* What makes the wire transfer a specifically identifiable fund is that the specific amount converted is pled, not the nature of the account that received the funds. *Id.*

Here, Plaintiffs' second cause of action is for conversion, specifically, $308,939.72 in funds wired by Plaintiffs to Clearlake Ventures LLC, and which Truist placed into First Class'

9

account. ECF Dkt. No. 39-6, p. 20. This is the same factual pattern as *Manufacturers Hanover Trust Co.* and, as explained by the First Department, states a claim for conversion.

Truist's argues that Plaintiffs cannot allege a specific identifiable fund because "money deposited into a bank deposit account 'are not sufficiently specific and identifiable, in relation to the bank's other funds to support a claim [for conversion].'" Truist's Memorandum of Law, p. 16. This argument does not address the First Department's explicit, contrary holding in *Family Health Mgt., LLC*. 207 A.D.3d at 139.

In fact, all Truist's citations establish is that a depositor who deposits money with a bank cannot establish conversion, a situation Truist is at some paints to make clear is not our fact pattern. CSMF ¶ 16. In *Law Offices of K.C. Okoli, P.C.*, the factual crux of the plaintiff's claim for conversion was "based on the bank's failure to make funds from a deposited check available for withdrawal as soon as those funds had been collected from the check drawer." 481 Fed. Appx. 622, 624 (2nd Cir. 2012). Unlike our facts, the plaintiff's relationship to the defendant bank was as a depositor and the underlying transaction was a general deposit of funds *with the defendant bank* for the plaintiff's own account, thus commingling the depositor's funds with the bank's other funds. As a result, the plaintiff failed to state a claim for conversion because the "conversion" was predicated upon a generalized deposit of funds with the defendant. *Id.* Such a claim is not conversion, but breach of contract. *Costoso v. Bank of Am., N.A.*, 74 F.Supp.3d 558, 573-574 (EDNY 2015).

Truist's also argues that *once* Truist converted the funds, it no longer became a specific, identifiable fund. Truist's Memorandum of Law, p. 17. This argument, of course, is deeply flawed because Truist should not have deposited the funds where, as here, it knew the beneficiary was incorrect. NY UCC § 4-A-207(2). This, of course, leads into Truist's second argument that Truist

did not "exercise an unauthorized dominion" and control over Precision's funds and refused to return them. Truist's Memorandum of Law, p. 17-18. This argument is also incorrect because Truist had no entitlement to retain funds on behalf of the incorrect beneficiary. NY UCC § 4-A-303(3), NY UCC § 4-A-207(2)(b) ("If no person has rights as beneficiary, acceptance of the order cannot occur"); NY UCC § 4-A-207(1) (receiving bank cannot accept a wire to a "nonexistent or unidentifiable account" and no person has rights as a beneficiary of the order and acceptance of the order cannot occur). Truist, of course, has not returned the funds.

**POINT V: TRUIST IS NOT ENTITLED TO DISMISSAL OF PRECISION'S CLAIM OF NEGLIGENCE.**

The parties agree that the three elements of negligence are (i) duty of care, (ii) breach of that duty, and (iii) that Plaintiffs suffered damages. Truist's Memorandum of Law, p. 18. As noted, while it is true that Truist does not have a generalized duty of care to non-customers, it *did* have a duty "to credit the Wire as directed or return or refuse the Wire" in this specific transaction arising from the NY UCC § 4-A-207(2) and the more generalized obligation not to steal other people's money. As explained in *Family Health Mgt., LLC*, Truist's receipt of funds "created 'an obligation [on defendant's part' to return or otherwise treat in a particular manner the specific fund in question.'" 207 A.D.3d at 142. As is undisputed, Truist breached that duty by placing $308,939.72 into First Class' funds when First Class was not the beneficiary. ECF Dkt. No. 39-6, p. 20. As a result, Plaintiffs suffered $308,939.72 by Truist's negligence. Hence, Plaintiffs have pled a claim for negligence.

**POINT VI: TRUIST IS NOT ENTITLED TO DISMISSAL OF PRECISION'S CLAIM OF INDEMNIFICATION.**

"The principle of common-law, or implied indemnification, permits one who has been compelled to pay for the wrong of another to recover from the wrongdoer the damages it paid to the injured party." *17 Vista Fee Assocs. v. Teachers Ins. & Annuity Ass'n of Am.*, 259 A.D.2d 75, 80 (2nd Dept. 1999). "In the classic case, implied indemnity permits one held vicariously liable solely on account of the negligence of another to shift the entire burden of the loss to the actual wrongdoer." *Id.*; *see also Dora Homes, Inc. v. Epperson*, 344 F.Supp.2d 875, 894 (EDNY 2004).

Here, a payoff sum directed to Clearlake Ventures LLC was converted by Truist to an account held by First Class, improperly. ECF Dkt. No. 39-6, pp. 1, 20. Green Mountain Holdings (Cayman), Ltd. seeks to foreclose on Plaintiffs' property, the Premises, in order to satisfy an obligation the Wire was intended to pay. Truist, who had a legal obligation "to credit the Wire as directed or return or refuse the Wire," did not do any of these and, instead, applied the wire to the wrong beneficiary.

In moving for summary judgment, Truist avers, again, that it had no duty to Plaintiffs. As noted, this is incorrect as a matter of law, as Truist had an obligation "to credit the Wire as directed or return or refuse the Wire." *Family Health Mgt., LLC*, 207 A.D.3d at 142; NY UCC § 4-A-207(2); *cf.* Truist's Memorandum of Law, p. 20.

Accordingly, Truist should be denied summary judgment as to indemnification.


**POINT VII: TRUIST IS NOT ENTITLED TO DISMISSAL OF PRECISION'S CONSTRUCTIVE TRUST CLAIM.**

Lastly, Truist's argument regarding a "constructive trust" fails because it is an equitable remedy, arising under New York law to prevent unjust enrichment. *Se, e.g. Sharp v. Kosmalski*,

40 N.Y.2d 119, 123 (NY 1976). Crucially, "Although the factors are useful in many cases constructive trust doctrine is not rigidly limited." *Simonds v. Simonds*, 45 N.Y.2d 233, 241 (NY 1978). "[a] constructive trust will be erected whenever necessary to satisfy the demands of justice * * * [Its] applicability is limited only by the inventiveness of men who find new ways to enrich themselves unjustly by grasping what should not belong to them." *Id.* (citing J. Desmond in *Latham v. Father Divine*, 299 N.Y. 22, 26-27 (NY 1949)).

"For a single example, one who wrongfully prevents a testator from executing a new will eliminating him as beneficiary will be held as a constructive trustee even in the absence of a confidential or fiduciary relation, a promise by the 'trustee', and a transfer in reliance by the testator." *Id.*

Truist's extended discussion of the aforesaid elements thereby misses the only element the New York Courts actually care about vis-à-vis constructive trust: unjust enrichment. MOL, p. 24-25. Truist, by retaining $308,939.72, and then giving it to one of its own depositors, constitutes unjust enrichment, to the detriment of Plaintiffs.

Here, there can be no possible dispute that Truist received $308,939.72 which did not belong to Truist or even any of its depositors. NY UCC § 4-A-207(1), NY UCC § 4-A-207(2)(b). Truist then "spent" that money by crediting it to one of its depositors, who promptly spent it themselves. By taking Plaintiffs' money, Truist had a duty to return those funds. If all other claims fail, a constructive trust over $308,939.72 against Truist should be granted.

**POINT VIII: PRECISION WITHRAWS THE FIFTH AND SIXTH CLAIMS.**

Precision hereby withdraws its fifth and sixth claims for fraud and aiding and abetting fraud. The balance of the evidence is insufficient to raise a genuine issue of material fact that Truist itself, or one of its employees, engaged in fraud. Documents from Truist establish that multiple branches were involved, making a single "inside man" claim improbable.

## CONCLUSION

For all the foregoing reasons, Truist's motion for summary judgment must be denied in its entirety.

DATED: October 16, 2023
          Washingtonville, NY

_____
Daniel H. Richland, Esq.
Richland & Falkowski, PLLC
5 Fairlawn Drive, Suite 204
Washingtonville, New York 10992
*Counsel for Defendants/Third-Party Plaintiffs*
*Precision Pro Contracting Services, LLC and*
*Melvin Turner a/k/a Melvin Turner, Jr.*